IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-4

No. COA20-795

Filed 4 January 2022

Montgomery County, No. 16CRS050062, 64-65, 19CRS1060

STATE OF NORTH CAROLINA

v.

GLENN MADISION HOGAN, II.

Appeal by defendant from judgments entered on or about 7 October 2019 by Judge V. Bradford Long in Superior Court, Montgomery County. Heard in the Court of Appeals 24 August 2021.

*Attorney General Joshua H. Stein, by Assistant Attorney General Michael T. Henry, for the State.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender Aaron Thomas Johnson, for defendant-appellant.*

STROUD, Chief Judge.

¶ 1        Because the trial court did not abuse its discretion in denying defendant's motion to excuse a juror for cause, we conclude there was no error in defendant's trial. We remand for correction of a clerical error.

## I.        Defendant's Convictions and Issues on Appeal

¶ 2        Defendant was convicted by a jury of  first-degree murder, conspiracy to commit robbery with a dangerous weapon, three counts of robbery with a dangerous

weapon, and three counts of first-degree kidnapping. The jury found defendant guilty of first-degree murder based upon four theories: malice, premeditation, and deliberation; torture; lying in wait; and felony murder. The trial court arrested judgment on the conspiracy conviction, one of the robbery convictions, and all of the kidnapping convictions, and entered sentences on the remaining convictions: first-degree murder and two counts of robbery. Defendant appeals his judgments. Because defendant *only* raises issues regarding a juror and a clerical error in one of his judgments, we will not recount the especially brutal and horrific factual background leading to his convictions.

## II.    Prospective Juror

¶ 3        Defendant's first argument on appeal is that "[t]he trial court reversibly erred by failing to excuse prospective juror Mary Smith[1] for cause where she indicated she might be unable to apply the presumption of innocence."

## A. Standard of Review

> We review a trial court's ruling on a challenge for cause for abuse of discretion. A trial court abuses its discretion if its determination is manifestly unsupported by reason and is so arbitrary that it could not have been the result of a reasoned decision. In our review, we consider not whether we might disagree with the trial court, but whether the trial

---

[1] We use a pseudonym for the juror at issue. We do so throughout the opinion without brackets in portions where the transcript is quoted.

> court's actions are fairly supported by the
> record.
>
> The question that the trial court must answer in
> determining whether to excuse a prospective juror for
> cause is whether the juror's views would prevent or
> substantially impair the performance of his duties as a
> juror in accordance with his instructions and his oath.
>
> . . . .
>
> If the record supports the trial court's decision that the
> juror could follow the law, then the trial court's ruling
> should be upheld on appeal.
>
> . . . .
>
> Indeed, an appellate court should reverse only in the event
> that the decision of the trial court is so arbitrary that it is
> void of reason. . . . [M]erely because a prospective juror
> holds personal views that do not comport completely with
> the structure set out in N.C.G.S. § 15A–2000 does not
> disqualify that person from fulfilling his or her civic
> responsibility to serve on a jury. Moreover, the General
> Assembly's intent is to maximize the pool of qualified
> citizens who can serve as jurors. Determinations of
> whether a juror would follow the law as instructed are best
> left to the trial judge, who is actually present during *voir
> dire* and has an opportunity to question the prospective
> juror. Deference to the trial court is appropriate because it
> is in a position to assess the demeanor of the venire, and of
> the individuals who compose it, a factor of critical
> importance in assessing the attitude and qualifications of
> potential jurors.

*State v. Cummings*, 361 N.C. 438, 447-50, 648 S.E.2d 788, 794-96 (2007) (citations

and quotation marks omitted).

**B. Ms. Smith's *Voir Dire***

Defendant moved to strike prospective juror Ms. Smith for cause. The trial

court denied this request. Defendant then used a preemptory challenge to remove

Ms. Smith. Defense counsel later noted to the trial court that he wanted to use a preemptory challenge on another juror, but had exhausted them, and thus he renewed his motion to remove Ms. Smith for cause. The trial court denied the motion.

¶ 5        To put the jury selection process in context, we note that this case received extensive coverage in the local news due to the horrific facts of the kidnapping and torture of the victim. Because of the pretrial publicity and seriousness of the charged crimes, the jury pool for this case included about 200 jurors. After excusing some prospective jurors for various hardships, the trial court divided the 146 remaining prospective jurors into two panels for *voir dire*. The prospective jurors were questioned individually, and many had prior knowledge of the case from media coverage or word of mouth in the community. Quite a few also knew about defendant's juvenile record and reputation. Many jurors were excused for cause based upon their stated inability to be fair and impartial due to pretrial publicity and others out of concern for the "gruesome" nature of the evidence. The entire jury selection process took five days.

¶ 6        The juror in question in this case, Ms. Smith, unlike many of the prospective jurors, had no prior knowledge of defendant or the case. Defendant argues the trial court abused its discretion in failing to allow him to excuse Ms. Smith for cause because "she indicated she might be unable to apply the presumption of innocence." During her *voir dire* Ms. Smith stated several times she did not know about this

specific case, and her father is a retired state trooper.  The Court questioned her:

> THE COURT:  Okay.  The fact that your dad is a retired highway patrolman – okay? – do you think that would color the way you viewed the evidence in this case?
>
> JUROR MARY SMITH:  It would.
>
> THE COURT:  How so?
>
> JUROR MARY SMITH: Because I know how loyal my dad was and how – these men mean to him, so I would prefer their judgment.
>
> THE COURT:  You think there's a danger that you might give their testimony more weight than another person's.
>
> JUROR MARY SMITH:  Yes.

The questioning continued:

> THE COURT:  --- okay? -- but what I think I heard you saying was you didn't think you could be fair to Mr. Hogan because you would tend to believe a police officer's testimony over someone else's.  Is that a fair summation of what you were saying?
>
> JUROR MARY SMITH:  Yeah.  But I would be willing to hear it, but it's just, growing up in law enforcement your whole life, you hear all the wrong and bad that happens in your community, and you want justice for everything, so ---
>
> THE COURT:  And I appreciate that.  But here's where we are:  We only have a chance to ask you questions about it now, and what I -- what I think I hear you saying is, "I would do my best."  You didn't use that phrase, but I think -- I think ---

JUROR MARY SMITH:  Yeah.

THE COURT:  --- what you're saying is – you're letting us know you sort of feel like you have a predisposition towards wrongdoers being caught and corrected for their actions.

JUROR MARY SMITH:  Yes.

THE COURT:  And that -- but you would try and do your best to be fair in this case.  Is that fair?

JUROR MARY SMITH:  Yes.

¶ 8     The State then questioned Ms. Smith:

MR. NADOLSKI:  I heard you say that, you know, because of your kind of slant on things as far as wanting justice for -- and -- but, you know, truthfully, I mean, that's what we all want.  I mean, that's the ---

JUROR MARY SMITH:  Yeah.

MR. NADOLSKI:     --- that's the system of government we live in.  We're -- that's what justice is all about.  So I just want to be -- just to be clear, I don't want to -- you know, ultimately, you know, it's the highest – it's one of the highest civic duties we have, is to serve as jurors and -- and do our duty as -- so that people that are charged with crimes will have people in the community that will hear their cases and determine their guilt or innocence. And so it's -- you know, it's a longstanding thing that passes down from the English law.  And it's – it's important.  It makes our system run and makes it work. . . . .

. . . .

MR. NADOLSKI:  And so the only question is, really,

can you -- and so if you're sat as a juror in this case, your job will be to hear the evidence, and then once you've heard the evidence, the judge would instruct you on the law. Then you would determine whether the defendant was guilty or not guilty of the crimes that are charged.

In that -- in that situation, you will hear testimony from many witnesses, lay witnesses and law enforcement, medical examiners, things like that. And your job will be to gauge the credibility of those witnesses. So that the question is: Can you do that and be fair and not let any predispositions you have have an effect on that?

So, for instance, you know, you use the same things that you use in your common sense, you know ---

JUROR MARY SMITH: Uh-huh.

MR. NADOLSKI: --- in your everyday lives: "Does this make sense, based on that fact? Does this make sense? "And you have to be fair to all the witnesses that testify.

JUROR MARY SMITH: Yeah.

MR. NADOLSKI: Does that make a ---

JUROR MARY SMITH: Yeah.

MR. NADOLSKI: So I guess the question is: If a -- if an officer testified in this case and maybe he said some things that didn't make sense and you thought, "Well, that doesn't really -- that really doesn't go with that," "It doesn't really compute," you're not going to let the fact that just because he's a law-enforcement officer come into play with that.

JUROR MARY SMITH: No.

MR. NADOLSKI: You're going to ---

JUROR MARY SMITH: No.

MR. NADOLSKI: You're going to use your common sense ---

JUROR MARY SMITH: Yes. Yes.

MR. NADOLSKI: Okay. And that's – that's really what this gets down to, is: Can you do that in this case, set those -- set your experiences with your daddy aside ---

JUROR MARY SMITH: Uh-huh.

MR. NADOLSKI: And I know your daddy would want you to be fair in this case, too. Right?

JUROR MARY SMITH: Yeah. Oh, yeah.

MR. NADOLSKI: So -- all right. And so that's the – that's the real question: Can you do that? Can you just push that aside, say, "I'm going to consider the evidence that's presented" –

JUROR MARY SMITH: Uh-huh.

MR. NADOLSKI: --- "I'm going to use the things that I use in my everyday affairs," like the ability of a person to see, hear the things that they're talking about, any apparent bias, things like that? And that's just – that's what ---

JUROR MARY SMITH: Yeah.

MR. NADOLSKI: --- you got to do. You think you can do that?

JUROR MARY SMITH: I think I could, yes.

Defendant's attorney then questioned Ms. Smith:

MR. ROOSE: Okay. All right. Okay. Now, you

indicated that you would – because you grew up with law enforcement of course, and have a lot of respect for all those people and everything, you would tend to defer to their side of things, here. Okay. Is that ---

JUROR MARY SMITH: No.

MR. ROOSE: Is that right?

JUROR MARY SMITH: Yeah, like – but like I said, I would, but I want to hear everything to make the right judgment.

MR. ROOSE: Okay. Would – so – all right. Right now, one of the – one of the three cardinal principals of criminal law in a criminal case is that Glenn Hogan sits here at the defendant's table clothed in the presumption of innocence. Can you presume Glenn Hogan to be innocent right now?

JUROR MARY SMITH: I don't know.

MR. ROOSE: Don't know if you can do that.

JUROR MARY SMITH: Yeah, I don't know.

¶ 10    Defendant's counsel continued questioning Ms. Smith, followed again by the State:

MR. ROOSE: But to start out, you have -- you need to be able to presume him to be innocent before you hear anything else. He doesn't have any burden. He doesn't have to prove anything. He doesn't ---

JUROR MARY SMITH: Okay.

MR. ROOSE: --- have to prove his innocence. The burden's 100 percent with the district attorney, here.

JUROR MARY SMITH:  Okay.

MR. ROOSE:  And they have to prove the case beyond a reasonable doubt.

JUROR MARY SMITH:  Okay.

MR. ROOSE:  But you don't know if you can presume him to be innocent at this time.  Is that right?

JUROR MARY SMITH:  I guess not.  I don't know.

MR. ROOSE:  Okay.  That's all the questions I have.

THE COURT:  Yes, sir.

MR. NADOLSKI:  Can I just follow up?

THE COURT:  Yep.

MR. NADOLSKI:  And I -- this may not have been – you may not have had clarity on this, but -- so when we talk about this presumption of innocence, it is – the presumption -- basically what you'll be – he's presumed innocent, and he's charged with a crime, but that – that doesn't mean anything.  It's just an allegation.  Right?

JUROR MARY SMITH:  Uh-huh.

MR. NADOLSKI:  And the presumption follows him until, until, you've heard all the evidence.  And you understand why that is.  You – it's fair -- basic fairness.

JUROR MARY SMITH:  Yeah.

MR. NADOLSKI:  Then the judge will instruct you after you've heard all the evidence, and then you determine whether the defendant is guilty or not guilty of a crime.  Is

that ---

JUROR MARY SMITH:  Yes.

MR. NADOLSKI:  So that's truly what you're going to be asked to do.  Can you ---

JUROR MARY SMITH:  Yes.

MR. NADOLSKI:  --- do that?

JUROR MARY SMITH:  Yes.

MR. NADOLSKI:  Okay.

THE COURT:  Yes, sir.

MR. ROOSE:  No further questions.

The *voir dire* concluded:

THE COURT:  Of course I remember [your father] Trooper [Smith].  The law presumes Mr. Hogan to be innocent.  This is vitally important to this case.

JUROR MARY SMITH:  Uh-huh.

THE COURT:  And the law says that this protection, this -- however you want to view it, however you can envision it in your head, this shield, this garment, whatever it is, surrounds Mr. Hogan and is never removed from him unless and until the State of North Carolina proves he's guilty beyond a reasonable doubt.  There is no burden or duty of any type on Mr. Hogan.  The burden rests on this table exclusively.

And, you know, these are tough things to talk about.  It's not things we ponder in our everyday lives.  I get paid to do this, and I don't ponder it in my everyday life, you know.  I've sat in that chair, and it's a different feeling

sitting in that chair than sitting in this chair. Sitting up here, you're just -- you talk in a loud voice and tell everybody what they're supposed to do. When you sit over there, you have to think about it. Okay?

So I need to know whether or not you can follow those rules, whether or not you can extend the burden --the -- whether or not you can hold the State to its burden of proof beyond a reasonable doubt and whether or not you can presume Mr. Hogan to be innocent and allow this presumption of innocence to remain shield or -- him clothed in this presumption of innocence unless and until the State proves he's guilty beyond a reasonable doubt. Easy to say. It's a little bit harder concept to wrap your mind around. But that's what I need to know whether or not you can do.

JUROR MARY SMITH: I can.

THE COURT: Okay. Anything else, Mr. Nadolski?

MR. NADOLSKI: No.

THE COURT: Mr. Roose?

MR. ROOSE: No.

¶ 12    While Ms. Smith admitted she was generally biased toward the side of law enforcement because her father had served as a law enforcement officer, she ultimately reiterated to the Court many times that she could be a fair juror, applying the presumption of innocence to defendant and the burden of proving guilt beyond a reasonable doubt to the State. While defendant primarily relies on a United States Supreme Court case, we recognize our own extensive case law on this issue. For example, in *Cummings*, our Supreme Court held the trial court did not abuse its

discretion in denying the defendant's motion to strike a juror for cause when the prospective juror was a law enforcement officer and made statements regarding his lack of impartiality and an inability to presume the defendant was innocent, but after additional questioning, he ultimately stated he would be fair to this defendant, would follow the trial court's instructions, and consider all of the evidence. *See id.*, 361 N.C. 438, 648 S.E.2d 788.

¶ 13         We also consider the context in which Ms. Smith was selected as a juror. As noted above, this case had extensive pretrial publicity and many prospective jurors had to be excused for cause based upon their prior knowledge of defendant or reports regarding the alleged crimes. The trial court called an especially large pool of prospective jurors and questioned jurors individually. Unlike many of the other prospective jurors, Ms. Smith had no prior knowledge of the case or defendant. We certainly cannot find that the trial court's denial of defendant's motion to strike Ms. Smith for cause was "so arbitrary that it is void of reason." *Cummings*, 361 N.C. at 449-50, 648 S.E.2d at 795. To the contrary, the trial court conducted the *voir dire* with great care and consideration of the particular challenges presented by this type of case.

¶ 14         We have reviewed the statements of Ms. Smith and are satisfied "that the record fairly supports the trial court's conclusion that [the prospective juror] would follow the law as instructed." *Id.* at 449, 648 S.E.2d at 795. We conclude there was

no abuse of discretion.  This argument is overruled.

### III.  Clerical Error

Defendant's only other argument on appeal is that "[r]emand is required to correct a clerical error because the trial court sentenced" defendant incorrectly on one of the judgments  (16CRS0050065 – one count of robbery with a dangerous weapon). The State concedes the sentence on the judgment is in error and should be *73* to 100 months rather than *77* to 100 months as is noted.  "When, on appeal, a clerical error is discovered in the trial court's judgment or order, it is appropriate to remand the case to the trial court for correction because of the importance that the record speak the truth."  *State v. Smith*, 188 N.C. App. 842, 845, 656 S.E.2d 695, 696 (2008) (citation and quotation marks omitted).  Accordingly, we remand for correction of the clerical error.

NO ERROR and REMANDED.

Judges DIETZ and COLLINS concur.